**CALIFORNIA CONSUMER ATTORNEYS, P.C.**
Michael H. Rosenstein (SBN 169091)
mhr@calattorneys.com
Sepehr Daghighian (SBN 239349)
sd@calattorneys.com
Alastair F. Hamblin (SBN 282044)
afh@calattorneys.com
10866 Wilshire Blvd, Suite 1200
Los Angeles, CA 90024
Telephone: (310) 872-2600
Facsimile: (310) 730-7377

Attorneys for Plaintiff,
**ARNEL DALMACIO**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNEL DALMACIO, an individual,<br><br>　　　　Plaintiff,<br>　　vs.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No.: 2:22-cv-01204-KS<br>Judge: Hon. Karen L. Stevenson<br><br>**DECLARATION OF SEPEHR DAGHIGHIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**<br><br>[Filed Concurrently with Plaintiff's Notice of Motion and Motion for Attorney's Fees, Costs and Expenses; Memorandum of Points and Authorities in Support Thereof, and Proposed Order]<br><br>Date: September 6, 2023<br>Time: 10:00 a.m.<br>Dept.: Courtroom 580 |

## **DECLARATION OF SEPEHR DAGHIGHIAN**

I, Sepehr Daghighian, declare under penalty of perjury the following:

1. I am an attorney at law, duly licensed to practice before all courts in the State of California. I have been a licensed practitioner in the State of California since 2005; SBN 239349. I have personal knowledge of all facts contained in this declaration and, if called upon to testify, I could and would competently testify to the truth of each statement contained herein.

2. I am a licensed practitioner and a partner at California Consumer Attorneys, P.C. ("CCA") in Los Angeles, California. In the instant action, I represented the Plaintiff, Arnel Dalmacio ("Plaintiff").

3. I submit this declaration in support of Plaintiff's Motion for Attorney's Fees, Costs, and Expenses.

### **Biography of Plaintiff's Attorneys That Worked on This Case**

4. In my career, I have handled hundreds of lemon law matters and tried approximately two-dozen lemon law cases to verdict before juries in State and Federal courts throughout California. My hourly rate and the rates charged by my firm have been approved by several dozen State and Federal Courts throughout the state. Like most other law firms throughout the State, from time to time, we adjust our attorneys' hourly rates in order to account for their added experience, added expenses in operating our practice, and other factors.

5. I graduated from University of California, Los Angeles with a Bachelor of Science degree in Physics and received my law degree from Loyola Law School in Los Angeles, California. In setting my hourly rate, I have considered such factors as my 17+ years of litigation experience, the skills and knowledge acquired over those years, my numerous trial victories, and the rates reasonably charged by other attorneys in the area in which I work. My rate is commensurate with other practitioners in my area providing civil litigation services and is regularly paid by my clients for services that are similar to those provided to Plaintiff. My

1 firm's hourly rates are the same in cases in which we represent clients on an hourly
2 basis as they are in cases like this, when we work on a fully contingent basis.

3     6.  My firm's attorneys and I keep contemporaneous time records of the
4 work performed on cases and bill in increments of tenths-of-an-hour, as is typical
5 in the industry.

6     7.  In my firm's billing statement submitted along with this motion, I
7 reduced our billing for several of the inter-office conferences and other
8 administrative tasks, which occurred throughout this litigation. Also, I routinely
9 perform several hours of supervisory work on each file, without billing that time to
10 the client. My firm's billing practice is to reduce such items in our bills as a courtesy
11 to our clients. I offered the Defendant that same courtesy in my firm's billing
12 statement in this case. My hourly rate from the case's inception to approximately
13 January 1, 2023 was $575.00 per hour. In litigating this matter, I performed 4.6
14 hours of work at $575/hour, which included my review and analysis of the case file
15 in order to begin preparing the case for trial, for a total amount of $2,645.00. On or
16 about January 1, 2023, my hourly rate was increased to $625.00 per hour, and I
17 performed an additional 129.7 hours of work at $625/hour (which includes 5.5
18 hours spent drafting this Motion and Declaration). I anticipate performing 4.5 hours
19 of additional work at my current rate of $625/hour to review and analyze
20 Defendant's Opposition to Motion for Attorney's Fees and Costs and Expenses, to
21 draft our Reply Brief, and to attend the hearing on this Motion. In total, I will have
22 performed 134.2 hours of work on this case at $625/hour for a total of $83,875.00.

23    8.  Michael H. Rosenstein is a partner at CCA and one of the most
24 experienced lemon law trial attorneys in the State. Mr. Rosenstein's rate was
25 previously $650.00 per hour and was recently increased to $700.00 per hour. In
26 setting this rate, CCA considers such factors as his 28+ years of litigation
27 experience, the skills and knowledge acquired over those years, and the rates
28 reasonably charged by other attorneys who work in this area of law. Mr. Rosenstein

DECLARATION OF SEPEHR DAGHIGHIAN IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

has litigated hundreds of lemon law matters and taken dozens of those matters to jury verdict. Mr. Rosenstein performed 2.8 hours of work on this case at the $700.00 per hour rate and 6.2 hours of work at the $650.00 per hour rate for a total of $5,990.00.

9. Alastair Hamblin has been an associate attorney with California Consumer Attorneys since March of 2022. Mr. Hamblin completed his undergraduate studies at Berklee College of Music in Boston, Massachusetts in 2001, and received his juris doctor from Southwestern Law School in 2007. Mr. Hamblin has been admitted to practice in California since 2012. He is also admitted to practice in all federal districts in California. Mr. Hamblin previously worked at an environmental and commercial litigation firm in Los Angeles from 2009 to 2019, and has litigated simple and complex environmental, insurance and business cases in both state and federal court. During this time, Mr. Hamblin also worked dozens of lemon law cases and other consumer protection matters. Prior to joining California Consumer Attorneys, Mr. Hamblin worked as a solo practitioner from 2019 to 2022. Mr. Hamblin's hourly rate from the case's inception to approximately January 1, 2023 was $500.00 per hour, and he billed 36.3 hours at $500.00 per hour for a total of $18,150.00. On or about January 1, 2023 Mr. Hamblin's hourly rate was increased to $550.00 per hour. Mr. Hamblin billed 36.7 hours at $550.00 per hour for a total of $20,185.00. In total, Mr. Hamblin will have performed 73.0 hours of work on this case for a total of $38,335.00.

10. Brian T. Shippen-Murray is a senior attorney duly licensed to practice law in the State of California. Mr. Shippen-Murray has been actively prosecuting lemon law cases on behalf of consumers since 2015. Prior to entering this area of law, Mr. Shippen-Murray gained experience litigating single plaintiff cases and class actions in both state and federal court. In 2012, Mr. Shippen-Murray received his Juris Doctor degree from Pepperdine University School of Law. Also, in 2012 Mr. Shippen-Murray received his master's degree in Dispute Resolution from the

Straus Institute for Dispute Resolution. Mr. Shippen-Murray has litigated hundreds of Lemon Law matters and served as trial counsel. Mr. Shippen-Murray's billing rate from this case's inception until approximately April 1, 2022 was $450.00 per hour, and he billed 11.2 hours at that rate, for a total of $5,040.00. On or about April 1, 2022, Mr. Shippen-Murray's billing rate increased to $500/hour, and he performed another 1.0 hours at that rate, for a total of $500.00. On or about January 1, 2023, Mr. Shippen-Murray's billing rate increased to $550.00 per-hour, and he billed 0.1 hours at that rate, for a total of $55.00, bringing his total billing in this matter to $5,595.00. Mr. Shippen-Murray is identified in the billing invoice as "Brian Murray."

11.     The total amount of fees incurred by my office to litigate this case, including anticipated fees to prepare Plaintiff's Reply to Opposition to Motion for Attorney's Fees and attend the hearing, is $152,499.63. The total amount of expenses incurred by my office to litigate this case is $16,059.63. A true and correct copy of the billing incurred in prosecution of this matter by my firm is attached as **Exhibit A.**[1]

## The Rates Charged by My Firm are Reasonable, Have Been Approved by Numerous Courts, and are Commensurate With the Rates Charged by Others in the Field

12.     In considering the appropriate rates to charge in a matter such as this, I have reviewed a report entitled United States Consumer Law Attorney Fee Survey Report published in 2019 reflecting rates for 2017 to 2018. Based on the facts presented in the Report, I have determined that the rates charged by the attorneys in this case are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law. On Pages 1 – 32, the purpose and

---

[1] In the event that Defendant files any post-judgment motions in this matter, Plaintiff's attorneys (including this firm) will necessarily incur additional fees/costs, which we may seek through an additional motion/memorandum.

methodology of the Report are described. On Pages 58 – 61, the Report sets forth the average hourly rates of consumer law attorneys in California based on experience. The information reflected in these pages supports the reasonableness of the attorney hourly rates charged in this case, which are equivalent, if not below, the average rate of attorneys who practice consumer law in California. On pages 360 – 365, the Report identifies cases in California that have used this Report as supporting evidence in fee awards. The entire report is 407 pages so I have attached only the relevant pages dealing with California attorneys and California law. A true and correct copy of the report is attached hereto as **Exhibit B.**

    13.    CCA's hourly rates have been approved by numerous courts throughout the State of California:

    a.    On October 24, 2019, District Judge R. Gary Klausner of California's Central District Federal Court awarded $164,305.63 in attorney fees in the matter of *Raul Estuardo Tiul Ortega v. BMW of North America, LLC* (C.D. Cal., Case No. 2:18-cv-06637-R-SK.) Specifically, the Court deemed my hourly rate of $550 per hour reasonable, as well as $275 per hour for my associate, Erik K. Schmitt. A true and correct copy of the order is attached hereto as **Exhibit C**.

    b.    On February 5, 2020, Judge Robert B. Broadbelt III awarded $99,333,75 in attorney fees, including $5,981.25 incurred in preparation of the Motion for Attorney's Fees and in anticipation for the reply and hearing on the Motion) in the matter of *Roman Salcedo v. FCA US LLC* (Los Angeles Superior Court, Case No. BC655659). The Court found that Plaintiffs' attorneys rates were reasonable based on each attorney's respective qualifications, skill, and experience, and the prevailing rates in the community for

similar work. I was the handling attorney on this matter. A true and correct copy of the order is attached hereto as **Exhibit D**.

c. On April 5, 2019, Judge Angel M. Bermudez awarded $49,261.25 in attorney fees, including a <u>0.5% lodestar enhancement</u> of $24,630.63, for a total fee award of $73,891.88 in the matter of *Gonzales, Gabriel v. FCA US LLC* (Riverside Superior Court, Case No. MCC1700800). The Court found the time expenditure was reasonably necessary to conduct the litigation, and the amount was reasonable. I was the handling attorney in this matter. A true and correct copy of the order is attached hereto as **Exhibit E**.

d. On August 19, 2019, Judge Norman P. Tarle awarded $95,497.50 in attorney fees and $28,546.20 in costs and expenses in the matter of *Rita Gamez v. FCA US LLC* (Los Angeles Superior Court, Case No. BC638011). The Court awarded 100% of the fees requested by Plaintiff's counsel, including finding my hourly rate of $490 per hour reasonable, as well as that of my associate, Erik K. Schmitt ($250 per hour). A true and correct copy of the order is attached hereto as **Exhibit F**.

e. On July 10, 2019, Judge Angel M. Bermudez awarded $40,978.75 in attorney fees in the matter of *Jose Cisneros v. FCA US LLC* (Riverside Superior Court, Case No. MCC1700337). The Court awarded 100% of the fees requested by Plaintiff's counsel, including finding my rate of $550 per hour reasonable in the community, as well as that of my associates Larry Castruita ($385 per hour) and Erik K. Schmitt ($275 per hour). A true and correct copy of the order is attached hereto as **Exhibit G**.

f. On June 5, 2019, Judge Janet M. Frangie awarded $184,104.69 in attorney fees and $49,666.22 in costs and expenses in the matter of

      *Blasco Real Estate, Inc., et al. v. FCA US LLC* (San Bernardino Superior Court, Case No. CIVDS1609641) after my colleagues and I won that trial against defendant FCA US LLC. Specifically, the Court deemed my then hourly rate of $490 per hour reasonable, as well as $250 per hour for my associate, Erik K. Schmitt, who tried the case with me. A true and correct copy of the order is attached hereto as **Exhibit H**.

g.    On August 8, 2018, Judge John P. Doyle awarded 100% of the lodestar fees requested by motion in the total amount of $72,478.75 in the matter of *Morgan v. FCA* (Los Angeles County Superior Court, Case No. BC625668). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit I**.

h.    On September 18, 2018, after my firm won a trial against FCA US LLC in Sacramento, California, Hon. Judge Raoul Thorbourne ordered that the Defendant pay total fees and costs of $201,321.07, which included a fee award of $150,718.50 to my firm for our time spent working on the case. (*Waggener v. FCA US LLC*; Sacramento County Superior Court, Case No. 2016-00203774). A true and correct copy of Judge Thorbourne's ruling is attached hereto as **Exhibit J**.

i.    On September 20, 2017, Judge Gail R. Feuer awarded $227,228.00 in attorney fees and $31,712.55 in costs and expenses in the matter of *Anita Longin vs. Ford Motor Company* (Los Angeles Superior Court, Case No. BC564186). The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in

DECLARATION OF SEPEHR DAGHIGHIAN IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

the matter. A true and correct copy of the signed order is attached hereto as **Exhibit K**.

j. On June 3, 2020, Judge David O. Carter awarded $143,062.50 in attorney fees and $12,123.01 in costs and expenses in the matter of *Jorge Barrera v. Jaguar Land Rover North America, LLC et al.* (C.D. Cal., Case No. 5:19-cv-00847-DOC-SHK). The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit L**.

k. On December 9, 2019, Judge Michael R. Wilner of California's Central District Federal Court awarded $26,258.91 in attorney fees, including a $3,160.29 bonus, in the matter of *Tarango v. FCA* (C.D. Cal., Case No. CV 17-2475 MRW, 2019 WL 7875052.) Specifically, the Court deemed my hourly rate reasonable. A true and correct copy of the order is attached hereto as **Exhibit M**.

l. On March 15, 2019, Judge Michael R. Wilner of California's Central District Federal Court awarded $59,114.87 in attorney fees in the matter of *Donner v. FCA* (C.D. Cal., Case No. CV 17-2303 MRW, 2019 WL 2902704.) Specifically, the Court deemed my hourly rate reasonable. A true and correct copy of the order is attached hereto as **Exhibit N**.

m. On June 15, 2020, Judge Michael R. Wilner of California's Central District Federal Court awarded $22,122 in attorney fees in the matter of *Garcia v. FCA* (C.D. Cal., Case No. CV 17-2198 MRW, 2020 WL 10573204.) Specifically, the Court deemed my hourly rate reasonable. A true and correct copy of the order is attached hereto as **Exhibit O**.

**Factual Background, Purchase History, and Repair History Summary**

14. On May 11, 2019, Arnel Dalmacio ("Plaintiff") purchased a new 2019 BMW X5 ("Subject Vehicle") for a total purchase price of $101,360.16. The Subject Vehicle was manufactured by BMW North America, LLC (hereafter "BMW" or "Defendant"), which provided an express written warranty.

15. The Subject Vehicle was purchased and used primarily for personal, family, or household purposes. In connection with the purchase, Plaintiff received an express written warranty in which Defendant undertook to preserve or maintain the utility or performance of the Subject Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time. The warranty provided, in relevant part, that in the event a defect developed with the Subject Vehicle during the warranty period, Plaintiff could deliver the Subject Vehicle for repair services to BMW's representative, and the Subject Vehicle would be repaired.

16. Shortly after Plaintiff's acquisition, the Subject Vehicle began exhibiting serious nonconformities to warranty.

17. On February 29, 2020, after only 9 months and 8,537 miles of use, Mr. Dalmacio presented the Subject Vehicle to Defendant's authorized repair facility for a software update, to address a malfunction with the rearview camera, and to evaluate the dual storage battery system.

18. On March 29, 2021, Plaintiff returned for evaluation of an illuminated "check engine" light evidencing a leak. BMW technicians performed a smoke test but found no leak, so they replaced the Natural Vacuum Leak Diagnosis ("NVLD") module and returned the Subject Vehicle to Plaintiff.

19. On October 8, 2021, Plaintiff was required to have the Subject Vehicle towed in for service due to multiple electrical faults involving starter operation and the camera-based driver assistance systems. Three days later, another tow was required because the Subject Vehicle failed to start due to seizure of the starter,

coupled with an overheating warning light. BMW technicians replaced the starter and again returned the vehicle to Plaintiff.

20. On October 22, 2021, Plaintiff returned with multiple complaints of electronics failures involving active blind spot detection, lane assist, and other critical safety-related driver assistance functions. These problems would require Plaintiff to return for service yet again, on November 1, 2021.

21. After another illuminated "check engine" light forced Plaintiff to return for service on December 6, 2021, Plaintiff began to fear for his safety, so he contacted BMW on January 3, 2022 to report his safety concerns and to request that BMW repurchase the Subject Vehicle. His call was not escalated, and no formal review was undertaken.

22. BMW thus refused to fulfill its legal obligation under the Act by fully repurchasing or replacing Plaintiff's vehicle, despite these numerous warranty repairs and unresolved issues.

23. BMW hoped its stubborn routine would succeed indefinitely, such that Mr. Dalmacio would continue to drive his defective vehicle like so many other consumers do. Notably, if BMW had fulfilled its statutory obligations at that point, all of the fees in this case – both Plaintiff's and Defendant's – could have been avoided entirely.

24. Given BMW's stance in refusing to repurchase or replace the Subject Vehicle despite having an affirmative duty, Mr. Dalmacio was forced to contact CCA and seek legal advice regarding how to have BMW honor its warranty and obligations under the law and repurchase or replace the vehicle.

**Litigation History and Settlement Attempts**

25. As Mr. Dalmacio grew frustrated with BMW's inability to conform the Subject Vehicle to its warranty, he contacted CCA to make BMW repurchase or replace the Subject Vehicle in accordance with California law. CCA reviewed the Subject Vehicle's repair history, analyzed Plaintiff's claims, and agreed to

DECLARATION OF SEPEHR DAGHIGHIAN IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

represent him on a fully contingent basis. In taking on this representation, CCA agreed to advance likely thousands of dollars in litigation costs and commit an unknown number of hours of attorney services. CCA assumed the genuine risk that it would not recoup its attorney's fees and costs for several years, if at all.

26. On February 22, 2022, Plaintiff initiated this action in the United States District Court, Central District of California.

27. On March 18, 2022, BMW answered Plaintiff's Complaint by denying all liability and asserting seventeen (17) affirmative defenses.

28. Plaintiff conferred with BMW's counsel on April 18, 2022 regarding preparation of a joint Rule 26 Report, which was thereafter drafted and revised before being filed on April 22, 2022.

29. Plaintiff's counsel prepared Plaintiff's Initial Disclosures and accompanying document production between May 20, 2022 and June 3, 2022.

30. Plaintiff's counsel prepared Plaintiff's Case Management statement on or about July 7, 2022, then attended an initial Case Management Conference on August 10, 2022.

31. On July 28, 2022, Plaintiff prepared and served discovery requests, consisting of 24 requests for admission, 41 requests for production of documents and 16 interrogatories. After discussions involving a mediator, Plaintiff received and reviewed BMW's initial discovery responses on or about September 13, 2022.

32. On October 26, 2022, Plaintiff prepared for and took the deposition of Defendant's Rule 30(b)(6) witness.

33. On December 1, 2022, Plaintiff prepared for and attended mediation, but the case did not settle, so trial preparations continued.

34. Trial preparations continued from January to March, 2023, as Plaintiff's counsel analyzed BMW's document production and sparred with BMW regarding discovery and vehicle inspection.

DECLARATION OF SEPEHR DAGHIGHIAN IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

35. On April 3, 2023, Plaintiff's counsel reviewed BMW's Ex Parte Application to continue trial and began preparing Plaintiff's Opposition. On April 28, 2023, the Court agreed with Plaintiff that BMW failed to meet the requisite standard for extraordinary relief, so BMW's Application was denied, and trial preparations thereafter accelerated.

36. On April 27, 2023, Plaintiff attended an Informal Discovery Conference ("IDC"), but BMW did not appear, so the IDC was continued and completed on May 1, 2023.

37. On May 4, 2023, Plaintiff's counsel prepared for and defended the deposition of Plaintiff's expert, Darrel Blasjo, and on May 10, 2023, Plaintiff's counsel took the deposition of BMW's rebuttal expert, Jose Grejalva.

38. Plaintiff began preparation of Motion in Limine ("MIL") No. 1 on May 13, 2023 and continued preparing Plaintiff's MILs and Plaintiff's Opposition to BMW's MILs over the next week.

39. Plaintiff prepared additional trial documents, including Joint Jury Instructions, Joint Witness List, Joint Exhibit List and Plaintiff's trial exhibits, between May 17 – 22, 2023.

40. After reviewing the Court's ruling on the parties' MILs on June 12, 2023, Plaintiff's counsel met with Plaintiff to prepare for trial on June 14, 2023 and attended a final pre-trial status conference on June 20, 2023.

41. With no settlement offers forthcoming, Plaintiff made final trial preparations in late June and early July, 2023, including preparation of trial exhibits and graphics and direct and cross examination outlines of expert witnesses. Because this matter was settled on the eve of trial, virtually all trial preparation work had been already completed by Plaintiff's counsel when the case finally resolved.

DECLARATION OF SEPEHR DAGHIGHIAN IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

42. On July 7, 2023, with a July 11, 2023 trial date looming, the parties reached an agreement in principle to settle the case for a lump sum, with attorney's fees to be decided by agreement or motion.

43. This motion is made following the conference of counsel to resolve attorneys' fees pursuant to Local Rule 7-3, which took place on July 12, 2023.

44. My office specializes in consumer law and were well-equipped to handle Defendant's aggressive and dilatory litigation tactics. To that end, our experience has enabled us to develop litigation strategies that are highly effective and efficient. Our specialized knowledge and experience in lemon law frequently results in outcomes far better than those obtained by attorneys who do not specialize in this specific area of law. This experience provided a resolution to this matter far beyond that which Defendant was willing to entertain. Because of this experience, knowledge, and expertise, Plaintiff recovered a substantial settlement, despite Defendant's stubborn and dilatory defense strategies.

45. This case required a broad range of specialized knowledge: (1) an understanding of the full scope of nuanced consumer protection laws; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as how to investigate technical issues with automobiles; and (3) knowledge of auto manufacturers' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations. Plaintiff's attorneys have acquired knowledge and insight about these issues and this experience typically results in significantly higher judgments or settlements for their clients, like Mr. Dalmacio's hard-fought recovery here.

46. Our skill in this area is also evidenced by the size of Plaintiff's recovery as well as the nominal time expended on litigation tasks, which results in lower overall billing. We do not spend an inordinate amount of time researching because we specialize in this area of law. Nor do we spend unreasonable time preparing pleadings, as our case documents have been regularly revised over the

years and merely need to be edited, rather than drafted from scratch. While substantial fees have been incurred, those fees led to the execution of effective strategies that resulted in concrete results for Mr. Dalmacio. Indeed, had BMW simply chosen to honor Plaintiff's pre-suit repurchase or replacement request in good faith, all involved would have been able to avoid the legal fees, costs and expenses now at issue. Unfortunately, BMW chose not to do so.

47. On July 12, 2023, Plaintiff's counsel, Sepehr Daghighian, met and conferred with Defendant's counsel in an attempt to informally resolve Plaintiff's attorney's fees, costs and expenses pursuant to Local Rule 7-3. However, the Parties were not able to come to an agreement, necessitating the filing of this motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 9th day of August 2023, at Los Angeles, California.

                /s/ Sepehr Daghighian
                 Sepehr Daghighian, Esq.
                 Declarant

DECLARATION OF SEPEHR DAGHIGHIAN IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES