**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARNEL DALMACIO,<br><br>                 **Plaintiff,**<br><br>      v.<br><br>BMW OF NORTH AMERICA, LLC,<br>et al.,<br><br>             **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **NO. CV 22-1204-KS**<br><br>**ORDER GRANTING IN PART**<br>**PLAINTIFF'S MOTION FOR**<br>**ATTORNEYS' FEES [DKT. NO. 88]** |

**INTRODUCTION**

Before the Court is Plaintiff's Motion for Attorney's Fees, Costs and Expenses (Dkt. No. 88 ("Motion")), filed on August 9, 2023, with a Memorandum of Points and Authorities in Support Thereof; the Declaration of Attorney Sepehr Daghighian; and related exhibits consisting of billing records, a copy of the 2017-2018 United States Consumer Law Attorney Fee Survey Report, correspondence, and copies of thirteen orders involving attorney fees in ostensibly analogous cases. (Dkt. Nos. 88-1—88-16 (Plaintiff's Exs. A-O).)

Defendant BMW of North America, LLC ("Defendant") filed a Memorandum of Points and Authorities in Opposition to the Motion on August 16, 2023, with a supporting Declaration

of Attorney Georges A. Haddad ("Haddad Decl."), several exhibits including copies of billing entries challenged by Defendant, a copy of an email between counsel discussing a settlement offer, and a copy of the 2021 Real Rate Report, a Wolters Kluwer publication ("Real Rate Report"), which includes an analysis of law firm rates, trends, and practices throughout the United States.  (Dkt. Nos. 89, 90.)  On August 21, 2023, Plaintiff filed a Reply ("Reply") supported by a second Declaration of Sepehr Daghighian ("Daghighian Decl. 2") and five additional exhibits.  (Dkt. No. 91.)  On September 5, 2023, the Court heard oral argument and took the matter under submission.  (Dkt. No. 93.)

Pursuant to California Civil Code section 1794(d), Plaintiff:

> moves for an order awarding attorney's fees under the "lodestar" method in the amount of $152,499.63 for the legal services provided by California Consumer Attorneys, P.C. (hereinafter "CCA").   Plaintiff also requests a modest "lodestar" enhancement of 0.5x, in the amount of $76,249.82, for a total fee award of $209,816.25.   Plaintiff further moves this Court for reimbursement of verifiable costs and expenses in the amount of $16,059.63.  The total amount requested by Plaintiff's motion is $244,809.08.

(Dkt. No. 88 at 2.[1])

In support, Plaintiff argues that the hourly billing rates and time billed by Plaintiff's counsel were reasonable for the case, that Plaintiff should be granted a lodestar multiplier, that Plaintiff is entitled to reimbursement of litigation costs and expenses, and that the Court should award Plaintiff's counsel a lodestar multiplier based on the risk of contingency cases

---

[1] For clarity and ease of reference, the Court cites the document and page numbers provided by its CM-ECF docketing system.  The page numbers are located at the top right of each page.

1   and delay of payment, and that Plaintiff is entitled to recover costs and expenses reasonably
2   incurred.  (*Id.* at 13-25.)

3

4   In opposition, Defendant contends that the hourly rates sought by Plaintiff are excessive,
5   that Plaintiff's litigation strategy was designed to increase fees, that the credibility of Plaintiff's
6   counsel's billing records is undermined by the work actually performed, that the Court should
7   not award any fees for the preparation of the instant Motion or any lodestar multiplier, and that
8   the Court should strike $4,061.12 in expert witness fees from Plaintiff's request for costs.  (Dkt.
9   No. 89 at 5-21.)  Defendant points to several specific billing rates and entries and requests that
10  the Court reduce them to various "reasonable" amounts.  (*Id.* at 8-9, 11, 14, 15-19.)

11

12  Having thoroughly considered the parties' briefing and the arguments of counsel at the
13  hearing, for the reasons outlined below, the Court GRANTS the Motion in part and finds that
14  a total award to Plaintiff in the amount of $161,636.76 comprises the total reasonable
15  allowable fees incurred in connection with the litigation in this matter.

16

17                                            **BACKGROUND**

18

19  On May 11, 2019, Plaintiff purchased a new 2019 BMW X5 from South Bay BMW in
20  Torrance, California.  (Compl. ¶¶ 8, 17 (Dkt. No. 1).)  Plaintiff alleges that the subject vehicle
21  "was delivered to Plaintiff with serious defects and nonconformities to warranty and
22  developed other serious defects and nonconformities to warranty including, but not limited to,
23  the engine defects, electrical defects, and other serious nonconformities to warranty." (Compl.
24  ¶ 18.)  On February 22, 2022, Plaintiff commenced the instant lawsuit in this Court by filing
25  the Complaint.  (Dkt. No. 1.)  The Complaint alleges violations of California's Song-Berly
26  Consumer Warranty Act, Cal. Civ. Code §§ 1790 et seq. ("SBA"), including breach of an
27  express warranty (count one), breach of the implied warranty of merchantability (count two),
28  and the failure to complete repairs within a reasonable time (count three).  (Compl. ¶¶ 16-56.)

3

Defendant answered the Complaint on March 18, 2022.  (Dkt. No. 13.)  On July 18, 2022, the parties consented to proceed before the undersigned Magistrate Judge.  (Dkt. No. 27.)

The parties litigated this case for approximately 16 months, culminating in a $25,000 settlement (plus reasonable fees and costs) that was reached in principle on July 7, 2023, two court days before trial was scheduled to commence.  (Dkt. No. 86; Dkt. No. 89 at ; Dkt. No. 91-1 at 3.)  On July 11, 2023, the Court vacated all dates and deadlines "with the expectation that the parties will file a joint stipulation for dismissal within 60 days."  (Dkt. No. 87.)  On August 9, 2023, Plaintiff filed the instant Motion.  (Dkt. No. 88.)  In Plaintiff's Memorandum of Points and Authorities in support of the Motion, Plaintiff represents that "the parties settled the underlying claims for a lump sum, allowing Plaintiff to recover their reasonable attorney's fees and costs by noticed motion to the Court."  (*Id.* at 8.)  Plaintiff further states that the pending Motion "was made following the conference of counsel to resolve attorneys' fees pursuant to Local Rule 7-3, . . . . However, the Parties were not able to come to an agreement, necessitating the filing of this [M]otion."  (*Id.*)  Finally, Plaintiff asserts that "the only issue that remains unresolved is the award of Plaintiff's attorney's fees and costs."  (*Id.*)

## THE PARTIES' POSITIONS

### The Motion

Plaintiff's Motion begins with the legal premise that Plaintiff's attorneys are entitled to fees, costs, and expenses under the SBA.  (*Id.* at 13.)  From there, Plaintiff argues that the hourly rates sought by Plaintiff's attorneys are reasonable considering the lodestar factors, and compared to the "rates charged by other attorneys with similar experience in this area of law."  (*Id.* at 16.)   Plaintiff also contends that the actual time billed by Plaintiff's counsel was reasonably incurred in light of the nature and complexity of this litigation as well as the skill exhibited by counsel.  (*Id.* at 13-18.)  Plaintiff also argues that the undisclosed settlement

amount cannot function to limit the attorney fee recovery, and that counsel is entitled to a lodestar multiplier and costs and expenses reasonably incurred. (*Id.* at 18-25.) More specifically, Plaintiff's counsel represents that the law firm billed 233.1 hours litigating this case for a total of $152,499.63. (*Id.* at 25; Dkt. No. 88-2 at 16.) In total, Plaintiff seeks $244,284.08.[2] (Dkt. No. 88 at 13.)

### Defendant's Opposition

Defendant first argues that Plaintiff's hourly rates are excessive. Defendant cites to the Real Rate Report and *Salazar v. Glenn E. Thomas Co., Inc.*, No. CV 20-8114-DSF (PVCx), 2021 WL 5230798 (C.D. Cal. Nov. 5, 2021), and contends that Petitioner's attorneys' rates should be reduced from a range of $450-$700 to a range of $238-$350. (Dkt. No. 89 at 7-11.)

Next, Defendant argues that "Plaintiff's litigation strategy was to prolong litigation to increase fees and costs," which was allegedly evidenced by the Plaintiff making an unreasonably large settlement demand four days before motions in limine were filed, and then later settling the case at "less than 12%" of the original demand despite no material changes to the case. (*Id.* at 12-14.) Defendant reasons that "fees that were incurred by Plaintiff that were the result of an unreasonable strategy are not reasonable fees" and should not be awarded. (*Id.* at 13 (emphasis omitted).) On this ground, Defendant argues that Plaintiff's should not be awarded any fees after the date of Plaintiff's initial offer (May 12, 2023) and that Plaintiff's counsel's overall fees should be "reduced to no more than $35,049.20." (*Id.* at 14.)

---

[2] Plaintiff erroneously requested two different sums in the Motion. (*See* Dkt. No. 88 at 13 ("In total, Plaintiff requests $244,809.08 in attorneys' fees, costs and expenses."); *see also id.* at 25 ("In total, Plaintiff requests $225,875.88.").) In the Reply, Plaintiff corrects the arithmetic errors and deducts $350 from the requested sum "for Alastair Hamblin's time preparing for the court hearing that he did not attend." (Dkt. No. 91 at 23 n.6.) The adjusted total is $244,284.08 ($152,149.63 in attorney fees + $76,074.82 lodestar multiplier/fee enhancement + $16,059.63 in fees, costs, and expenses = $244,284.08). (*Id.* at 23.)

Defendant then argues that the credibility of Plaintiff's counsel's billing records are undermined by the work actually performed, and points to ten specific entries or groups of entries that allegedly prove this to be true.  (*Id.* at 15-19.)  More specifically, Defendant contends that the fees claimed by Plaintiff's counsel should be reduced because: (1) Mr. Daghighian, a partner, performed "standard litigation tasks that should be performed by a paralegal or associate"; (2) Plaintiff's counsel overstaffed and spent an unreasonable amount of time opposing an *ex parte* application to continue the trial; (3) Plaintiff's counsel "created a discovery dispute to increase fees" in April and May 2023, "and those hours should be eliminated and not recoverable"; (4) Plaintiff's counsel inflated billing concerning one deposition in the case; (5) Plaintiff's counsel failed to identify the biller in several time entries and those entries should not result in fees; (6) Plaintiff's counsel unreasonably billed 6.8 hours and $3,460 to draft the Joint Rule 26(f) report and initial disclosures, and that amount should be reduced; (7) Plaintiff's counsel billed 2.7 hours and $1,365 to consent to the Magistrate Judge, which is unreasonable and should be stricken from any fee award; (8) Plaintiff's counsel's timesheets demonstrate duplicative/overstaffed billing and the excess entries should be excluded from any fee award; (9) Plaintiff's counsel spent 26.20 hours and billed $16,175.00 to draft motions in limine, which Defendant argues was "an unreasonable amount of time to file boiler plate [sic] motions."; and (10) Plaintiff's counsel block-billed several entries concerning trial preparation and those entries should be reduced by at least half.  (*Id.* at 15-19.)

Defendant next argues that the Court should deny Plaintiff "all fees related to this instant Motion," specifically, "10 hours and [] $6,250 related to drafting the Motion and anticipated hours to reply to this Opposition and attend the hearing."  (*Id.* at 19.)  Defendant further contends that a positive lodestar multiplier is unwarranted in this "simple lemon law case" and should not be included in any awarded fees.  (*Id.* at 19-20.)  Finally, Defendant argues that Plaintiff's request for $4,061.12 in expert witness fees is not authorized by statute and should be excluded from any fee award.  (*Id.* at 20-21.)

6

1

2

**Plaintiff's Reply**

3      In the Reply, Plaintiff largely addresses and attempts to rebut the specific issues related

4  to various billing entries raised by Defendant.  (Dkt. No. 91.)  In support for the arguments

5  raised in the Reply, Plaintiff included a second declaration of attorney Sepehr Daghighian and

6  five additional exhibits featuring rulings in three other cases in this District as well as copies

7  of two orders issued in this matter.  (Dkt. Nos. 91-1 – 91-6.)  The Court elaborates on Plaintiff's

8  arguments raised in the Reply to the extent necessary below.

9

10                                    **LEGAL STANDARD**

11

12      Under the SBA, a prevailing buyer:

13

14          shall be allowed by the court to recover as part of the judgment a sum equal to

15          the aggregate amount of costs and expenses, including attorney's fees based

16          on actual time expended, determined by the court to have been reasonably

17          incurred by the buyer in connection with the commencement and prosecution

18          of such action.

19

20  Cal. Civ. Code § 1794(d).  The court must base any fee award "upon actual time expended on

21  the case, as long as such fees are reasonably incurred – both from the standpoint of time spent

22  and the amount charged."  *Lang v. Ford Motor Co.*, No. 2:21-cv-05376-FWS, 2023 WL

23  3149274, at *2 (C.D. Cal. Mar. 17, 2023) (*quoting Warren v. Kia Motors Am., Inc.*, 30 Cal.

24  App. 5th 24, 35 (Cal. Ct. App. 2018).  Where the prevailing buyer is represented on a

25  contingency fee basis, the buyer is entitled to recover "reasonable attorney fees for time

26  reasonably expended."  *Glover v. Mercedes-Benz USA*, No. 8:21-cv-01969-JDE, 2022 WL

27  17080196, at *2 (C.D. Cal. Aug. 9, 2022) (*quoting Warren*, 30 Cal. App. 5th at 35).

28

7

In examining reasonableness, a court must "ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Rahman v. FCA US LLC et al.*, 594 F. Supp. 3d 1199, 1203 (C.D. Cal. 2022) (*quoting Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (Cal. Ct. App. 1994)). Moreover:

> [It] is important to note that we are not concerned in this case with a customary statutory or contractual provision which merely provides for "reasonable attorney fees." The statute we are dealing with takes a somewhat different approach. It requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable. These circumstances may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved. . . . A prevailing buyer has the burden of "showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'"

*Id.*

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court adopted the lodestar method for calculating attorneys' fee awards. Under the lodestar method, a court multiplies the number of hours reasonably expended on a particular motion by a reasonable hourly rate. *Id.* at 433. "When faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Lit.*, No. ML 18-02814 AB

(PVCx), 2021 WL 3163799, at *6 (C.D. Cal. July 22, 2021) (*quoting Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)). "A court that exercises its discretion to reduce the lodestar amount by an across-the-board percentage reduction typically must explain its reasons for doing so." *Id.* (*quoting Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013)). "Nevertheless, the district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation." *Id.* (*quoting Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

## DISCUSSION

### A. Plaintiff's Counsel's Attorney Billing Rates

The Court begins the lodestar analysis by determining whether Plaintiff's counsel's attorney billing rates are reasonable. Plaintiff represents that four attorneys from the law firm of California Consumer Attorneys PC worked on and billed to this case as follows:

| Attorney | Seniority | Billing Rate |
|---|---|---|
| Michael Rosenstein | Partner | $700/hr. in 2023; $650/hr. in 2022 |
| Sepehr Daghighian | Partner | $625/hr. in 2023; $575/hr. in 2022 |
| Brian Murray | Senior Associate | $550/hr. in 2023; $500/hr. from approx. April to December 2022; $450/hr. from 12/21/2021 to 3/18/2022 |

| Alastair Hamblin | Associate | $550/hr. in 2023; $500/hr. in 2022[3] |

(Dkt. No. 88-2 (California Consumer Attorneys, P.C. Billing Records) at 2-16.)

Plaintiff argues that the attorneys at California Consumer Attorneys, P.C. "specialize in consumer law," "developed litigation strategies that are highly effective and efficient," and have "specialized knowledge and experience in lemon law [that] frequently results in outcomes far better than those obtained by attorneys who do not specialize in this specific area of law." (Dkt. No. 88 at 17.)  Specifically, the lead attorney on the case, Sepehr Daghighian, has "17+ years of litigation experience" and has "handled hundreds of lemon law matters and tried approximately two-dozen lemon law cases to verdict before juries in State and Federal courts throughout California."  (Dkt. No. 88-1 at 2.)  Partner Michael H. Rosenstein is "one of the most experienced lemon law trial attorneys in the State" with "28+ years of litigation experience," and "has litigated hundreds of lemon law matters and taken dozens of those matters to jury verdict." (*Id.* at 3-4.)  Associate Alastair Hamblin has been admitted to practice in California since 2012 "and has litigated simple and complex environmental, insurance and business cases in both state and federal court.  During this time, Mr. Hamblin also worked dozens of lemon law cases and other consumer protection matters." (*Id.* at 4.)  Senior Associate Brian T. Shippen-Murray "has been actively prosecuting lemon law cases on behalf of consumers since 2015" and "has litigated hundreds of Lemon Law matters and served as trial counsel." (*Id.* at 4-5.)

---

[3]  In his declaration, Mr. Daghighian states, "Like most other law firms throughout the State, from time to time, we adjust our attorneys' hourly rates in order to account for their added experience, added expenses in operating our practice, and other factors."  (Dkt. No. 88-1 at 2.)

Plaintiff maintains that his counsel's rates "are within the range of rates charged by other attorneys with similar experience in this area of law," as demonstrated by "the numerous court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases" and "a National Survey further supporting the reasonableness of the hourly rates," namely, the U.S. Consumer Law Attorney Fee Survey Report.  (Dkt. No. 88 at 16; Dkt. No. 88-3.)

Defendant argues that Plaintiff's counsel's hourly rate should be reduced to an amount commensurate with the Real Rate Report's suggested rates for consumer attorneys of $295/hour for partners and $215/hour for associates.  (Dkt. No. 89 at 9-11.)  Defendant further argues that these proposed lower rates are consistent with a decision from this District, *Salazar v. Glenn E. Thomas Co., Inc.*, No. CV 20-8114-DSF (PVCx), 2021 WL 5230798 (C.D. Cal. Nov. 5, 2021), which this Court cited with approval in determining an attorney fee award in its own prior case, *O.T. v. BabyBjorn Inc.*, No. CV 20-4517-MSC (KSx), 2022 WL 3013216 (C.D. Cal. June 7, 2022).  (Dkt. No. 89 at 7-9.)

"Generally, the reasonable hourly rate used for the lodestar calculation is that prevailing in the community for similar work."  *Gordillo v. Ford Motor Co.*, No. 1:11-cv-01786 MJS, 2014 WL 2801243, at *5 (E.D. Cal. June 19, 2014) (*quoting Ctr. For Biological Diversity et al. v. Cnty of San Bernardino*, 188 Cal. App. 4th 603, 616 (Cal. Ct. App. 2010).  The relevant "community" is "usually considered to be the district in which the court sits."  *Cox v. FCA US LLC*, No. 3:20-cv-03808-WHO, 2022 WL 316681, at *2 (N.D. Cal. Feb. 2, 2022).  The burden is on the party seeking attorney fees to prove that the fees are reasonable.  *Gordillo*, 2014 WL 2801243, at *5.  In determining "a reasonable hourly rate," a district court should consider counsel's experience, reputation, ability, as well as the outcome of the case, the customary fees, and the novelty or the difficulty of the question presented.  *Glover v. Mercedes-Benz USA, LLC*, No. 8:21-cv-01969-JDE, 2022 WL 17080196, at *2 (C.D. Cal. Aug. 9, 2022) (*citing Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016)).  Moreover, "district courts

11

may rely 'on their own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Id.* (*quoting Ingram v. Oroudjian*, 647 F. 3d 925, 928 (9th Cir. 2011) (per curiam)).  Additionally, "[d]ecisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness." *Samuel v. Ford Motor Co.*, CV 21-6767 DSF (SKx), 2023 WL 5207433, at *2 (C.D. Cal. Feb. 22, 2023).

Here, the Court has reviewed the cases cited by both parties, the 2017-2018 U.S. Consumer Law Attorney Fee Survey Report, the Real Rate Report, and the relevant factors. *Glover*, 2022 WL 17080196 at *2.  The Court also relies on the Court's own knowledge of the customary rates in the greater Los Angeles metropolitan area for work by attorneys on Song-Beverly cases.  *Id.*  Based upon the foregoing, the Court finds Plaintiff's counsel has sufficiently established the reasonableness of its rates in this case, and the comparability of those rates to similarly-situated lawyers.  Further, as the Court has no reason to question counsel's representation that it actually expended the hours billed, the Court accepts Plaintiff's counsel's representations as to the actual time expended at the rates cited above: 233.1 attorney hours for a total of $ 152,149.63 (dkt. No. 88-2 at 16; dkt. No. 91 at 23).  *Lang.*, 2023 WL 3149274, at *2.

### B.  Plaintiff's Attorney's Time Billed

Defendant challenges several specific aspects of Plaintiff's counsel's billing entries, all of which are discussed below.

### 1.  Staffing

Defendant argues that Plaintiff's counsel "staffed this case in the most inefficient manner to maximize their fee recovery."  (Dkt. No. 89 at 15.)  Defendant reasons that Mr.

Daghighian, a partner, billed 59.5% of the 233.1 hours billed by California Consumer Attorneys, P.C. to this case. (*Id.*) Further, the fact that "Plaintiff's counsel's bills show no support staff or paralegals billing time to this matter" is ostensibly evidence that Daghighian unnecessarily performed "standard litigation tasks that should be performed by a paralegal or associate." (*Id.*) As examples, Defendant points to billing entries indicating that Daghighian "billed time to review the court's order assigning the magistrate judge, draft[] deposition notices, and perform legal research." (*Id.*)

"Evidence provided by a fee applicant 'should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.'" *Ferrer v. FCA US LLC*, No. 3:17-cv-00530-AJB-BGS, 2020 WL 6871046, at *2 (S.D. Cal. Nov. 23, 2020) (*quoting Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008)). That evidence was adequately provided by the billing records submitted in this case, and after reviewing those records, the Court rejects Defendant's argument.

Of the four attorneys who billed to this case, Daghighian and associate Alastair Hamblin billed the lion's share, specifically, 211.8 of the 233.1 total hours billed. (Dkt. No. 88-2 at 16.) Hamblin, an experienced associate, billed 73 hours to the case and Daghighian billed 138.8. (*Id.*) The billing records reflect generally that the work between partner Daghighian and associate Hamblin was divided according to experience, yet Hamblin handled several complex matters that could reasonably have been assigned to Daghighian if the law firm sought to "maximize their fee recovery." (Dkt. No. 88-2 at 4-14; Dkt. No. 89 at 15.) Further, the billing entries that Defendant points to as examples of this alleged staffing imbalance do not advance Defendant's argument. First, the Court disagrees with Defendant's apparent position that "perform[ing] legal research" is a "standard litigation task[] that should be performed by a paralegal or associate." (Dkt. No. 89 at 15.) The time billed by Daghighian for legal research and multiple other litigation tasks indicates only that a boutique law firm dedicated two of its

six attorneys to this case, a partner and an experienced associate, both attorneys actively worked on the case, and the lead counsel, Daghighian, worked more on the case than any other attorney in his firm, legal research included.

Second, Defendant's other complaints of Daghighian allegedly billing for tasks beneath his level of experience 0amount to 2.7 of the 233.1 hours billed: 0.2 hours to "Review Court order re: assignment to Magistrate Judge jurisdiction; Email correspondence with co-counsel re: same"; 1.2 hours to "Draft Deposition Notice and Request for Documents for Deposition of BMW's Expert, Jose Grijalva"; 1.3 hours to "Prepare for and attend Informal Discovery Conference with Court; BMW didn't appear and hearing was continued; Prepare deposition notice for BMW's Rebuttal expert." (Dkt. No. 88-2 at 5, 8, 10.) Assuming any of the tasks in that 2.7 hours could have been handled by someone with less experience, the small number of hours dedicated to those tasks evidences effort by Daghighian to complete them efficiently. Moreover, based on the number of complex tasks handled by Mr. Hamblin, the amount ultimately billed is possibly  lower than it would have been if the two lawyers had divided the labor differently.

The Court, therefore,  concludes that no deduction to the lodestar is warranted for any billing concerning the way Plaintiff's counsel staffed this case. *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

## 2.  Plaintiff's Opposition to Defendant's *Ex Parte* Application

Defendant next argues that Plaintiff's counsel spent an unreasonable amount of time opposing an *ex parte* application to continue trial. (Dkt. No. 89 at 15-16.) As Defendant points out, Plaintiff's counsel dedicated 10.3 hours and billed $6,370.00 to Defendant's *ex parte* application, and the 11-page brief Plaintiff filed contained arguments typically made in making

14

such an opposition.  The matter was also considered without a hearing.  (*Id.* at 15; Dkt. No. 35; Dkt No. 38; Dkt No. 88-2 at 8-9; Dkt. No. 90 at 4.)

The Court agrees with Defendant that Plaintiff's counsel spent an unreasonable amount of time in this instance.  Therefore, the Court reduces the time billed by Daghighian to draft the opposition and related tasks from 9.20 to a more reasonable 5 hours.  (Dkt. No. 88-2 at 8 (4/3/2023 Entry for Daghighian).)  At 5 hours, the total billed for that entry is reduced from $5,750 to $3,125.  The Court deducts the remaining $2,625 from the total lodestar calculation for unreasonable time spent opposing Defendant's *ex parte* application to continue the trial. *Lang*, 2023 WL 3149274, at *2; *Glover*, 2022 WL 17080196, at *2.

### 3.  Discovery Dispute

Defendant next contends that "Plaintiff's counsel created a discovery dispute to increase fees and those hours should be eliminated and not recoverable."  (Dkt. No. 89 at 16-17.) Defendant argues that Plaintiff withdrew the request after a hearing on the dispute, evidencing that Plaintiff's goal was not to win the dispute but increase its fees.  (*Id.*)  In the Reply, Plaintiff counters that it withdrew its request on only one issue, and only did so after the Court gave its preliminary thoughts at the hearing.  (Dkt. No. 91 at 16.)  Plaintiff also contends that Defendant was ultimately forced to comply with the discovery obligations that prompted the dispute based on other issues raised therein.  (*Id.*)

The Court finds no evidence from which to infer the discovery dispute at issue was manufactured in order to increase Plaintiff's fees.  Hence, no deduction to the lodestar is warranted on this basis.  *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

\\
\\
\\

### 4. Preparation Time to Depose Defendant's Expert

Defendant argues that Plaintiff, specifically Daghighian, "had eleven entries, billed 23.8 hours, and claim[s] $14,875 in fees to depose one person." (Dkt. No. 89 at 17.)  Defendant notes that "[t]he initial deposition was 3.7 hours long, but Mr. Daghighian spent 8.9 hours preparing for that deposition." (*Id.*)  In the Reply, Plaintiff counters that this "one person" was BMW's expert Jose Grijalva, the "centerpiece of BMW's defense at trial" who opined "that there was nothing wrong with Plaintiff's BMW." (Dkt. No. 91 at 17.)  Plaintiff's counsel contends that Grijalva submitted both an opening and a rebuttal expert report, was the only witness listed on Defendant's trial witness list, and that the deposition had to be taken in three parts due to scheduling issues on the part of Defendant's counsel. (*Id.*)  Therefore, Plaintiff asserts that Defendant's argument "oversimplifies the myriad of tasks, which were required to intelligently conduct this essential deposition." (*Id.*)

The Court finds that Defendant has not credibly challenged the hours Plaintiff's counsel devoted to deposing Mr. Grijalva.  In the Court's own experience in lemon law cases involving the same Defendant, Mr. Grijalva's expert opinion is often essential, and here it appears to have comprised nearly Defendant's entire case.  The Grijalva deposition took place over three different sessions, and Defendant has established no material connection between the length of the first session and the time it took Plaintiff's counsel to prepare for it.

As the Court cannot conclude on this record that Mr. Daghighian spent an unreasonable amount of time preparing for Mr. Grijalva's deposition, no deduction to the lodestar is warranted.  *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

\\
\\
\\
\\

1

2

### 5.   Entries Failing to Identify a Biller

3

Defendant requests that the Court strike Plaintiff's counsel's billing records that do not identify the biller because the Court cannot determine the reasonableness of such billing. (Dkt. No. 88-2 at 7, 11, 13; Dkt. No. 89 at 17.) In the Reply, Plaintiff's counsel acknowledges the omissions, argues they were clerical errors, and states that one of the entries should reflect Mr. Hamblin as the biller and the other three should reflect Mr. Rosenstein as the biller. (Dkt. No. 91 at 17.) The Court has reviewed the corrected entries and finds that the billing in those four entries was reasonable. No deduction to the lodestar is warranted here. *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

11

12

### 6.   Drafting the Joint Rule 26(f) Report

13

Defendant next points to Plaintiff's counsel's billing records reflecting that "it took 6.8 hours and [Plaintiff's counsel] billed $3,460 to draft the Joint Rule 26(f) report and initial disclosures. This is a straightforward, single plaintiff lemon law case[] without much complexity. It is unreasonable to bill so many hours to create this report." (Dkt. No. 89 at 17.) Plaintiff counters that "BMW was content to rely on Plaintiff's counsel to prepare joint filings, [so] it should not be heard to complain of the time it took them to do so." (Dkt. No. 91 at 18.) Here, the Joint Rule 26(f) Report was only eleven pages long and was most likely drafted on a template used by Plaintiff's counsel frequently. (Dkt. No. 18.) However, the Court disagrees with Defendant's interpretation of the billing records at issue. It appears that it actually took Mr. Hamblin less than 1.4 hours to draft the Joint Rule 26(f) Report, and the other eight complained-of entries reflect small increments of time for multiple small tasks, not just analyzing or editing the Joint Rule 26(f) Report or handling initial disclosures. (Dkt. No. 88-2 (4/19/2022 Entry for Hamblin); Dkt. No. 90 at 11-12.) No deduction to the lodestar is warranted here. *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

28

### 7.  Consent to the Magistrate Judge

Defendant contends that Plaintiff's counsel billed an unreasonable 2.7 hours in total ($1,375) to consent to the Magistrate Judge. (Dkt. No. 89 at 18.)  Plaintiff argues that his own counsel "handled all the necessary small tasks on the Parties' behalf – including preparing forms, filing forms, and corresponding with the Court – to move this case to Magistrate Jurisdiction," and that Defendant BMW benefitted from this work and did not offer to handle it themselves.  (*Id.*)  The Court agrees with Plaintiff.  Much of the extra time Defendant complains of concerning consent to the Magistrate Judge was time Plaintiff's counsel spent corresponding with co-counsel and opposing counsel so as to achieve a consensus before filing the necessary forms. (Dkt. No. 90 at 14-15.)  No deduction to the lodestar is warranted here. *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

### 8.  Duplicative Billing

Defendant complains that attorneys Daghighian and Hamblin unreasonably duplicated efforts in preparing for a case management conference that only Daghighian attended.  (Dkt. No. 89 at 18.)  In the Reply, Plaintiff agrees and concedes that the Court may deduct $350 for the duplicative time entry. (Dkt. No. 91 at 18; *see also* Dkt. No. 88-2 at 5 (8/9/2022 Entry for Hamblin).)  The Court agrees with the parties, and strikes that entry.  As Plaintiff has already deducted the $350 for the duplicative entry in the adjusted lodestar total in the Reply, the Court finds that no additional deduction to the lodestar is warranted here. (*See* FN 2, *supra*.)

### 9.  Time Spent Drafting Motions in Limine

Defendant next argues that Plaintiff's counsel billed an excessive amount of time for preparing Plaintiff's "boiler plate" motions in limine. (Dkt. No. 89 at 18.)  Plaintiff contends that the billing entries Defendant complains of include more tasks than merely preparing the

motions in limine, and that the motions in limine in this case were atypical, requiring more than usual research.  (Dkt. No. 91 at 19.)

Plaintiff made four motions in limine: (1) to exclude BMW's expert Jose Grijalva from testifying at trial; (2) to exclude testimony or opinions concerning BMW's failure to conduct discovery prior to the fact discovery cutoff; (3) to exclude testimony or argument that BMW fixed the vehicle with a reasonable number of repair attempts because it fixed a particular component; and (4) to exclude evidence not included in interrogatory responses.  (Dkt. Nos. 56-59.)  The Court denied all four of Plaintiff's motions in limine.  (Dkt. No. 81 at 7-16.)

After considering the parties' arguments, the Court elects to deduct 20% of the time billed in entries that include Plaintiff's counsel's research and preparation of its motions in limine because the time spent was excessive.  In this Court's own experience presiding over Song-Beverly actions, the motions in limine filed by Plaintiff's counsel were either not unusual or could have been prepared more efficiently by lawyers as experienced as Mr. Daghighian and Mr. Hamblin.  The Court agrees with Defendant that the total billed dollar amount at issue is $16,175.  (Dkt. No. 88-2 at 11-12; Dkt. No. 89 at 18; Dkt No. 90 at 17-20 (Ex. F).)  Consequently, the Court deducts an additional $3,235 from the total lodestar ($16,175 x .20 = $3,235).

## 10. Block Billing

Defendant next points to thirteen billing entries related to Plaintiff's counsel's preparation for trial and argues that the Court "should reduce the amount of time by at least half because the descriptions are vague, and block billed."  (Dkt. No. 89 at 18-19; Dkt. No. 90 at 22-25 (Ex. G).)  After reviewing the challenged billing entries the Court finds that some reduction in the time billed is warranted.

"Block billing" is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citation omitted). Under California law, block billing is not objectionable "per se," but it "certainly does increase the risk that the trial court, in a reasonable exercise of its discretion, will discount a fee request." *Farmers & Merchants Bank of Long Beach v. Willemsen*, No. EDCV 13-00609-JGB (SPx), 2014 WL 12593981, at *3 (C.D. Cal. Sep. 4, 2014) (*quoting Jaramillo v. Cnty. of Orange*, 200 Cal. App. 4th 811, 830 (Cal. Ct. App. 2011)). Further, "[b]lock billing is especially troublesome when it exacerbates 'the vagueness of counsel's fee request, a risky choice since the burden of proving entitlement to fees rests on the moving party.'" *Id.* (*quoting Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1325 (Cal. Ct. App. 2008).

Here, the Court finds that only *one* of the challenged entries is so voluminous that it is too vague for the Court to determine whether the time billed was reasonable. *Farmers & Merchants Bank of Long Beach*, 2014 WL 12593981, at *3; *Jaramillo*, 200 Cal. App. 4th at 830; *Christian Research Inst.*, 165 Cal. App. 4th at 1325. The Court discusses that entry below. However, as to the remaining entries at issue, Plaintiff's counsel's billing records are clear such that the Court can assess whether the total time spent on the various tasks was reasonable. *See Holcomb v. BMW of North America, LLC*, No. 18cv475 JM (BGS), 2020 WL 759285, at *7 (S.D. Cal. Feb. 14, 2020) (approving alleged block billing entries where those entries "contain multiple specific tasks that, when combined, reasonably amount to the time billed."). The time billed in those entries is either patently straightforward (*see e.g.*, Dkt. No. 88-2 at 8 (4/5/2023 Entry for Hamblin reflecting 1.6 hours spent to "[b]egin working on trial documents")) or the tasks grouped together are related and the reasonableness of the total time is easy to assess (Dkt. No. 88-2 at 12-14 (5/19/2023, 6/20/2023, 6/23/2023, 6/29/2023, 6/30/2023, 7/1/2023, 7/5/20237/6/2023, 7/7/2023 Entries for Daghighian). *Farmers & Merchants Bank of Long Beach*, 2014 WL 12593981, at *3.

20

The Court finds that a deduction to the lodestar is warranted for the following challenged entry below:

| Dates | Atty | Description | Hrs/Rate | Amount |
|-------|------|-------------|----------|--------|
| 7/5/2023 | Daghighian | Trial Preparation, including: detailed review of all Trial Exhibits and repair records, prepare notes regarding same for examination outlines; Email correspondence with Plaintiffs; Email correspondence with Plaintiff's expert Darrell Blasjo; Review Vehicle's Key Data history with regards to Plaintiffs' defects; Review BMW SIB Nos. 63319, 651919, 611319, 661020, 161514, 070314, 610922, and analyze same with regards to Plaintiffs' defects; Review BMW's customer service logs with regards to Plaintiffs' pre-litigation repurchase attempts; Meeting with JPM re: further trial preparation tasks | 5.7 625.00/hr | $3,562.50 |

(Dkt. No. 88-2 at 13; Dkt. No. 90 at 23-24.)

This Court may only approve actual time reasonably billed, *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35. Without a more detailed breakdown of the particular time spend to complete various individual tasks identified in the billing entry listed above, the Court cannot determine whether the time was, in fact, reasonably billed. *Farmers &*

1   *Merchants Bank of Long Beach*, 2014 WL 12593981, at *3; *Jaramillo*, 200 Cal. App. 4th at

2   830; *Christian Research Inst.*, 165 Cal. App. 4th at 1325.

3

4   Assuming that above "block-billed" entry surely contains some amount of reasonably

5   billed time, the Court finds that a 20% reduction as to this entry is warranted.  The Court reaches

6   this conclusion based upon its review of the State Bar of California Committee on Mandatory

7   Fee Arbitration, Arbitration Advisory 2016-02 (2016), which reiterated its previous conclusion

8   from 2003 that block billing "hides accountability and may increase time by 10% to 30%." *See*

9   State Bar of California Arbitration Advisory 2016-02, Analysis of Potential Bill Padding and

10  Other    Billing    Issues,    March    25,    2016    (*available    at*

11  *www.calbar.ca.gov/Portals/0/documents/mfa/2016/2016-02_Bill-Padding_r.pdf*).  The Court

12  adopts 20% because it is within the fee report's middle range, as the trial court did in *Welch*.

13  *Welch*, 480 F.3d at 948.  As a result, the Court deducts another $712.50 from the lodestar

14  ($3,562.50 x .20 = $712.50).

15

16  **11. Preparation of the Instant Fee Motion**

17

18  Defendant requests that the Court exercise its discretion to refuse to award any fees

19  "related to drafting the Motion and anticipated hours to reply to this Opposition and attend the

20  hearing." (Dkt. No. 89 at 19.)  Defendant does not provide any argument as to why the Court

21  should do so.  (*Id.*)

22

23  Fees for preparing and defending the instant Motion are recoverable.  *Quinonez v. FCA*

24  *US, LLC*, No. 2:19-cv-02032-KJM-JDP, 2022 WL 2007429, at *3 (N.D. Cal. June 6, 2022)

25  ("Generally, a plaintiff is entitled to [reasonable] fees spent drafting and defending the fee

26  motion.") (citation and internal quotation marks omitted).  However, in determining an

27  appropriate fee award, "the district court should exclude hours 'that are excessive, redundant,

28  or otherwise unnecessary.'"  *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)

(*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  Here, Plaintiff billed a total of 10 hours for a total of $6,250 related to the preparation of the instant Motion and in anticipation of the time required to draft the Reply and attend the hearing.  (Dkt. No. 88-2 at 14 (last three billing entries); Dkt. No. 89 at 19.)  The Court concludes that all of this time was billed reasonably.  "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; . . . ."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  The Court does so here and finds no reason to deduct any fees related to the instant Motion from the total lodestar.

### C.  The Court Declines to Apply a Lodestar Multiplier

Plaintiff argues that his counsel is entitled to a multiplier fee enhancement "to reflect the risk and delay in payment associated with taking a contingent case, as well as the result achieved." (Dkt. No. 88 at 21.)  In *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (Cal. 2001), the California Supreme Court affirmed that trial courts determining attorney fee awards are permitted to "include a fee enhancement for the purpose, e.g., of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment, in an amount approaching the market rate for comparable legal services."  However, "the trial court is *not required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof."  *Id.* at 1138 (emphasis added).  The *Ketchum* court further emphasized that:

> when determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar.  The factor of extraordinary skill, in particular, appears susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar.

*Id.*

Here, the Court finds that a multiplier is not warranted.  First, this case settled prior to trial and "the Song-Beverly claims in this case were not novel and did not involve difficult questions."  *In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Lit.*, 2021 WL 3163799, at *7.  Second, the skill displayed by Plaintiff's counsel in attaining a favorable result here for the client is accounted for in counsel's hourly rates and the final lodestar award, below.  *Id.* at *7-8; *Ketchum*, 24 Cal. 4th at 1138.

### D.  Calculating the Lodestar

The Court calculates the lodestar as follows: 232.4 attorney hours for a total of $152,149.63 in actual time expended (as adjusted by Plaintiff's counsel in the Reply to deduct 0.7 hours and $350 for a hearing Mr. Hamblin prepared for but did not attend); *minus* $2,625 based on time billed by Plaintiff to oppose Defendant's *ex parte* application to continue the trial as adjusted by the Court; *minus* $3,235 based on time billed to prepare Plaintiff's motions in limine as adjusted by the Court; and *minus* $712.50 for a vague block-billed entry. Subtracting the necessary sums above, the Court awards Plaintiff's counsel $145,577.13 in total lodestar fees + $16,059.63 in costs and expenses,[4] for a **final awarded amount of $161,636.76**.  *Rahman*, 594 F. Supp. 3d at 1203; *Nightingale*, 31 Cal. App. 4th at 104.

\\
\\
\\
\\
\\

---

[4]  After considering the arguments of the parties, the Court finds no adjustment to Plaintiff's request for costs and expenses is warranted.

Accordingly, for the reasons outlined above, Plaintiff's Fee Motion is GRANTED IN PART in the amount of $161,636.76.  Defendant shall pay this fee award to Plaintiff's counsel **within twenty-one (21) days of the date of this Order, unless otherwise agreed by the parties.**

DATED: October 18, 2023

KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

25